Good morning, Your Honors. May it please the Court, William Litt for Appellants County of Monterey, Hickey, and Hoskins. If I may, I'd like to reserve about three minutes for rebuttal. All right. Obviously, you're familiar with the facts of the case. In a nutshell, Mr. Obas was apprehended at the apartment of his ex-girlfriend. Members of the Monterey County Joint Gang Task Force had been looking for Mr. Obas for a long period of time because he had absconded from his felony probation and inviolated the terms of it, not just by absconding, but also by returning to his ex-girlfriend's home and allegedly committing domestic violence on a number of occasions. When Mr. Obas was approached by members of the Joint Gang Task Force, he jumped from a balcony to evade arrest. The members of the Joint Gang Task Force then arrested Mr. Obas at the spot where he landed, and when Mr. Obas complained that his legs hurt, they immediately summoned medical attention. Three EMT-certified firefighters showed up on the scene within minutes. The firehouse was very close by, and they examined Mr. Obas. They looked at both of his legs. They pulled his pants up, and the facts are undisputed, as was found by the district court, that they concluded that Mr. Obas did not have the appearance of any kind of serious injury. And what did Vinhurst, if we take the facts and the like most favorable to the other side, what did Vinhurst say? Vinhurst testified, first he said, hey, if you're not doing anything with him, this is a rough paraphrase, but it was, hey, if you're not doing anything with him, I could throw him in C-spine because he jumped from a two-story balcony. And then when he was questioned further at his deposition, Mr. Vinhurst said, I didn't have a conversation with law enforcement. I looked up. I said, hey, I could throw him in C-spine. And then he testified he had no idea who he said that to. The other two said that they heard it, though. The other two, meaning? Vinhurst said he didn't remember who he told it to, but Hickey and his partner said they heard that. I don't believe they testified that they had heard him say that he should be put in C-spine. I believe their testimony at their depositions was that they did not hear him say that. They, in fact, I'm certain of that. They both testified that they didn't hear anybody say anything about C-spine restraints. And, in fact, nobody else recalls hearing Firefighter Vinhurst make those comments. Mr. Obas himself has no recollection of any of the conversations between law enforcement and the firefighters. That's what he testified at his deposition. We will accept for purposes of this appeal that Firefighter Vinhurst said one of the two things he recalls saying, but he also testified that he doesn't recall who he said it to, the uniform, the race, the gender, the age. He has no idea. And both Hickey and Hoskins testified they never heard that. There was a report by a responder, Ash, who said that the operative place, Obas, in C-spine, and the officers advised that they would transport without C-spine, so they called it off at the officer's request. So taking that in the light most favorable to Mr. Obas, what does that do? What that does, and it's worth noting that that report was prepared a day or two after the incident. It doesn't matter. If we take it in the light most favorable. If we take it in the light most favorable, the testimony remains that Hickey and Hoskins both testified under oath that this was not said to them. They had no recollection of that. No one else confirms it was said to Hickey or Hoskins. Taking Mr. Obas's facts, Mr. Obas claims that there were 18 officers on the scene, and that's probably a pretty good ballpark. It wasn't a chaotic scene, but it was a very busy scene with 18 law enforcement officers from different agencies. In addition, the testimony at deposition of Fire Captain Ash and the declaration of Sergeant Rodriguez is that Ash and Rodriguez were standing off to the side, perhaps as much as 15 feet away from where Mr. Obas was with the other officers.  Let's take it from there. When the officers started to transport Mr. Obas to the car, and he made a grunting sound and complained of pain, why isn't it excessive force for them not to reevaluate the cease-firing issue at that point? I mean ---- Well, for several reasons, but it's not unusual for somebody to suffer a minor incident in the arrest. And as the firefighters testified, we had no way of knowing whether it was a strain, a sprain, a break. There was no way to know unless we had an X-ray machine out there. But we have Obas's testimony that he, that the officers ignored his pain and his inability to walk. If we take his testimony as true, at that point the officers were aware that there was some pain. And that's how this case is different from every other case. Now, this is a conflict in the record. That's a conflict in the record. You have the ---- if we exclude the recommendation about cease-firing, you have a conflict in the record. You have Obas who's saying I was obviously having difficulty walking, I was suffering pain, I told the officers I was suffering pain, and the officers saying, well, we were relying on the fact that the EMTs had examined him and could find nothing wrong with him. So that's a question of fact at that point, isn't it? Not necessarily, because the officers understood that he had just been examined by people with superior medical training. The EMTs were still there. They could have interceded. And ---- But was it their obligation to intercede, or was it the obligation of the officers to avoid inflicting unnecessary pain on someone who was in their custody? But this wasn't agonizing pain. This wasn't the kind of ---- Does it matter if it's agonizing or not, if it's excessive? But we're not conceding that it's excessive. Well, you don't have to concede that. On qualified immunity, we take the facts in the light most favorable to the complaining party. That's the difficulty I'm having with your argument, is you are arguing a best-case scenario for the officers, and it's just the opposite. We're supposed to take the best-case scenario for the plaintiff. But the undisputed facts as to what the deputies understood at this point is that ---- It's an objective. It's an objective. Exactly. Exactly, Your Honor. And I think looking at this objectively, almost any reasonable law enforcement officer would have responded in the same way, knowing that he had been examined by medical personnel. Even if somebody complains of pain, EMTs cannot detect internal injuries. So even if someone is complaining of pain, the officers are supposed to ignore that? They didn't ignore it. They walked him slowly to the car. They put him in. Well, what is excessive force under these circumstances? The case seems to be boiling down to who said what to whom and who could hear what somebody else said about the circumstances. But is taking someone, walking someone who has had a leg injury to a car a distance of, I don't know, 50 feet, when does that become the exercise of excessive force? Is it per se excessive force? Or what are the ---- Well, that appears ---- You know, what circumstances does one look for? That appears to be the argument that your colleague is making, that Your Honor is making. I'm not making an argument. I'm asking you questions. I'm sorry. I apologize. But the cases basically say that the question is not whether the officer's actions aggravated an undiscovered injury or condition, but whether their actions were objectively reasonable under the circumstances. And that's a Seventh Circuit case, the State of Phillips. But I do ---- What does the Ninth Circuit say? The Ninth Circuit said something almost identical in Tatum v. City and County of San Francisco, that you don't look to the injury that the arrestee eventually ended up with. You look at the conduct of the officers under the circumstances and whether it was objectively reasonable based upon what the officers knew. So in this case, would it be fair to say we are looking at whether it was objectively reasonable, taking the facts and the like most favorable to the plaintiff, for the officers to continue to walk a person in custody to a vehicle who indicated who they knew had jumped from a second floor balcony and who indicated there was pain in his leg? Is that the question we're looking at? That's one of two questions. That is definitely the first question, Your Honor. The second question is whether the right at issue was clearly established. Under Harlow v. Fitzgerald and its progeny. And the difference between this case and every other reported case that plaintiffs' counsel, defense counsel and the district court were able to find is that crucial element, the two medically trained individuals who were not associated with the law enforcement agencies had just examined Mr. Obas, and as the district court put it, concluded that he did not have any visible signs of serious injury. That's the difference between this case and Bailey. That's the difference between this case and most of the others. It's like Spears v. Ruth. The deputies are entitled to rely on the medical judgment of medically trained personnel. Well, in the red brief, on page one under the jurisdictional statement, the other side says, Defendants admit that if the firefighters recommended to Hickey and Hoskins that Obas travel by ambulance and the two defendants nonetheless forced Obas to walk to the hospital, Obas clearly established rights. Citing the extract of record 2829, 372-73 and 416. Did you make that admission in the trial court? Yes, with a number of qualifications. So you admitted that it's quite possible that if the firefighters told Hickey and Hoskins that that would be excessive force. But not what Firefighter Vinhurst said. Firefighter Vinhurst's statements were very casual, very equivocal. They do not rise to the level of a recommendation or an advisement that he should be transported by ambulance or placed in C-spine. He said, I did not have any money. That's your jury argument. Well, no, because deputies Hickey and Hoskins testified they never heard that, and there's no evidence to the contrary. Okay. I will reserve my two or three minutes. All right. Thank you. Good morning, Your Honors. May it please the Court. My name is Joseph May. I represent Plaintiff and Appellee Ramon Obas. I think it's interesting that this entire discussion hasn't really involved legal analysis. There haven't been cases discussed, really. This is all a discussion about what facts can or can't be shown. So what's your best case for the proposition that this could be excessive force? What's the clearly established law? If it's Bailey, Bailey wasn't published anywhere. As a matter of fact, the case in Bailey even went to a jury trial, and there was a loss. I mean, I don't see the ---- If your best case is Bailey for the proposition that this is clearly established, that picking somebody up like this under these circumstances and taking them to a car can amount to the use of excessive force during 1983, I think you're in real trouble. Thank you, Your Honor. My best case isn't the case at all. It is the admission by the defendants that ---- Wait. You said the big problem so far is we haven't talked facts. So I said, okay, let's talk law, Bailey. That's the case you lead with. Bailey doesn't seem to get you anywhere. It's an unpublished case out of San Francisco that went to a jury trial. The primary argument ---- Bailey lost. The primary argument, and maybe I didn't make it clear what I was getting at when I said we haven't been talking about the law. The point is that the strongest argument for plaintiff is that there's no appellate jurisdiction to the question because the questions here turn on issues of fact and an appeal of a qualified immunity decision is only reviewable when there is a legal contention. And that is the ---- Well, we get around that by construing the facts in the light most favorable to the plaintiff. Exactly. And I want to see what ---- where you establish as a clearly ---- as a clear proposition such as to give adequate notice to the officers. Okay. That simply ---- that taking a person under these circumstances to a car and then they get them in the car and he says, I hurt, so they take him to a hospital, where is it that they get him under the circumstances.  And I would like to see that clearly established that that can be excessive force. I don't think Bailey gets you anywhere. I'd like to clarify a factual issue first and then I'd like to answer the legal question if that's okay with you.  I'd like you to answer my question. Are you going to ---- Okay. So the legal authority is this, Your Honor. There's a Ninth Circuit case that says that even unpublished district court cases can inform the qualified immunity analysis. And so I think Bailey, even though it ended up in a trial, the district court opinion held that they weren't entitled to ---- Bailey's your best case, right? As far as walking on a broken leg, Bailey is probably the best case. Now, there's also Ninth Circuit ---- You know, I hate to beat the dead Bailey horse, but that's unpublished. And the Ninth Circuit says that ---- It has to be clearly established to give notice to the officers.  And a stronger argument. And there's other Ninth Circuit cases that say that the officers' own training and the department regulations can put the officers on notice that what they're doing clearly violates constitutional rights. It has to be clearly established law. And the Ninth Circuit says that training can inform that analysis. Inform. But you've got to start from someplace. And I'd like to see something better than Bailey. Your Honor, I ---- You don't have ---- Bailey is it. Okay. Well, then the other case is ---- Wait a minute. It's a sort of unusual situation. There's other Ninth Circuit cases. Exactly. And you have to give fair notice to officers by clearly established law. But you don't need a case on all fours. And I think that the law can be clearly established. You know, all the excessive force cases are clubs and guns and knives and fists, an application of that kind of force. This is a different kind of force, simply taking somebody to a car. Well, the requirement is that a reasonable officer must know that what he's doing violates clearly established constitutional rights. That's right. And here we have Vindehurst says that he recommended transport by ambulance. The defendants admit that if it was indeed an unequivocal recommendation, then what they did indeed violated clearly established law. They concede that. That's why I read that from the red brief. They do concede that point. And the district judge said, do you concede that point? Mr. Litt said, yes, assuming that the officers heard this. Well, that's a factual dispute. So if we take all the facts in light most favorable to plaintiffs, then indeed the defendants admit that what they did violated clearly established rights. What are the facts most favorable to the plaintiff that would indicate that the officers  These two particular officers heard the recommendation. Sure. These officers were the only officers that testified that they did have some sort of conversation or interaction with the firefighters. There were several officers on the scene, and declarations were submitted by the defense from several officers saying we didn't hear anything of this sort. The testimony of Hickey and Hoskins was that they had a fairly lengthy exchange with the firefighters, including the deputies asking the firefighters, what's going on with Mr. Obas? Is he okay? Can we take him in the police car? Would that be okay? And according to them, the firefighters said, yeah, he's clear. There's nothing wrong with him. You can walk with him to the police car, all completely refuted by the testimony of the firefighters. Ben Hurst says in that conversation, I recommended the C-spine and the transport. He says I recommended a deposition. He was asked, was that your recommendation, or were you just saying, oh, hey, here's a possibility? That's the question that was posed to him. He said, it was my recommendation. That was his word recommendation. His word. His word. And that's the strongest fact on that issue. Did Mr. Obas say that he heard the paramedics recommend transport in the C-spine? No. Mr. Obas doesn't recall very much. Unfortunately, he was in excruciating pain. His eyes were closed a lot of the time, as he says in his deposition. And he was just trying to get through the pain of having fallen 13 feet onto his legs on concrete. Not fallen, jumped. What permanent injury did he suffer as a result of this? There are pins and screws in his leg. He actually just had a second surgery in October. This is a displaced tibial plateau fracture. When he landed, the firefighters, including the fire captain and even Deputy, I believe it was Deputy Hoskins, who was trained as a lifeguard, all observed his leg and said, based on their training in medical procedures, there was no deformity in the leg, indicating a fracture. So our position is that it's a fair inference, and at this stage that must be given to the plaintiff. There was no displaced fracture. There could have been a hairline fracture, but forcing a 200-plus pound man to put most of his body weight on that hairline fracture could displace the fracture. We haven't gotten to expert discovery yet. An orthopedic surgeon will likely testify. If I remember correctly, he said there was a pop when he stood up. And that could have been the displacement. And that's when the bone separates. And that's a very serious injury required. Now it's two surgeries, and he's been in a wheelchair for a lot of the time. He is incarcerated, and that makes things even more difficult. So this is something he's going to live with, a 34, I believe, year old man with going to have leg problems the rest of his life. If the Court doesn't have any other questions, I think the brief, I set forth all my arguments and reliance on the record, so I will submit it if there are no questions. All right. Thank you, counsel. Thank you. Thank you. I really think your concession in the trial court may sink you on the question of whether it's clearly established, because you said if they did what it said they did, that would amount to excessive force. How do you get out from under your concession? That's not. Aren't you a stop to deny that? Go ahead. No, because the statement was counterfactual. What Firefighter Vintners testified he said would not have been a recommendation. He described it as a recommendation under close questioning by plaintiff's counsel. He said recommendation. There it is. Facts in the light most favorable. He said that two years later. That's how he described the words, but when he testified. You can argue to the jury, but he said. But he testified as to what he actually said. He might believe it. Well, that's possible, but he testified as to what he actually said at the time. Which was not a recommendation. With regard to pain, Johnson v. County of L.A. makes it clear that there needs to be something more than somebody complaining of pain. Well, we have something more. We have a guy with a fractured leg. But in Johnson, qualified immunity was extended after the gentleman had crashed his car and it had been damaged so badly that they had to extricate him from it. Right. And in that case. But the car was damaged, right? The car was badly damaged and they had to pull Mr. Johnson from the car. Right. But did he have any physical, I mean, injuries? He ended up as a quadriplegic as a result of being extricated from the car. But basically, the Court had said Johnson has not identified any additional signs of pain that Deputy Woodard should have recognized, nor has he explained how the signs he was showing should have indicated he had a back injury. Given the circumstances, Deputy Woodard's perceptions and concerns were entirely reasonable. The key to me in this case is that the facts are completely undisputed that when the EMT-trained firefighters examined Mr. Obas's legs, they didn't see anything wrong. But you don't stop. I mean, that's a snapshot. You don't stop there. You go forward. And you've conceded that if the officers continued to take, if the officers took him to the car unaided without a C-spine, that would be excessive force if there was a recommendation. So it doesn't help you to try to say. But there was no recommendation. Right. So your case rises or falls on whether or not there was a recommendation from the EMT. That was heard by the two deputies who were assisting Mr. Obas. Yeah, and that's the factual dispute. The trial court said you've got to take that to a jury. I mean. But again, there's speculation. Mr. Obas is relying on. You call it speculation. The other side says it was what happened. I mean, that's a classic factual dispute for a jury. And we don't even have jurisdiction over purely factual fights. Right. But in cases like Bingley versus Prunchak, there are two ways to look at it. One is you accept the plaintiff's version of facts as true for purposes of the appeal, or that the facts that the district court claimed were disputed are not material. And I think in terms of whether or not the right was clearly established and whether or not there was even any excessive force here, that. Well, clearly established is off the table because you conceded that. I don't contend that I did under the circumstances, Your Honor. That's all I have to say today. Thank you. Thank you. Thank you to both counsel for your argument. The case is argued and submitted for decision by the court.
judges: Cudahy, Trott, Rawlinson